IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 13, 2016

**STEVEN BERNARD SYDNOR v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2006-A-563     Mark J. Fishburn, Judge**

_____

**No. M2015-00651-CCA-R3-PC – Filed January 26, 2016**
_____

Petitioner, Steven Bernard Sydnor, appeals the denial of his petition for post-conviction relief from his Davidson County Criminal Court convictions for second degree murder and theft of property valued over $1000. Petitioner alleges that he received ineffective assistance of counsel in that trial counsel failed to discuss trial strategy with him and failed to present assisted suicide to the jury as a defense theory. Upon our review of the record, we affirm the decision of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROGER A. PAGE, J., joined.

Richard C. Strong (on appeal) and M. James Pulido (at hearing), Nashville, Tennessee, for the appellant, Steven Bernard Sydnor.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Glenn Funk, District Attorney General; and Sarah Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

In February 2006, the Davidson County Grand Jury indicted Petitioner for one count of first degree murder for the death of his girlfriend, April Anderson, and one count of theft of property valued at more than $10,000 for taking her 2004 Honda Accord. At

trial, the victim's sisters testified to the tumultuous relationship between the victim and Petitioner. *See State v. Steven Bernard Sydnor*, No. M2007-02393-CCA-R3-CD, 2010 WL 366670, at *1 (Tenn. Crim. App. Feb. 2, 2010), *perm. app. denied* (Tenn. June 17, 2010). The victim eventually moved from California to Tennessee to live with two of her sisters, but by October 2005, she was living with Petitioner, who had also moved to Tennessee. *Id.* The victim was planning on traveling with her family to a memorial service for her grandparents in Pennsylvania on November 26, 2005. *Id.* at *2.

On November 22, 2005, Officer Shane Fairbanks of the Metropolitan Nashville Police Department saw Petitioner walking down South Seventh Street. *Id.* Petitioner approached the officer with his hands in the air as if he were surrendering and told Officer Fairbanks that he wanted to turn himself in. *Id.* at *2-3. Petitioner reported that he and the victim had argued about a day and a half prior, that the victim had "played like" she wanted to commit suicide, that she retrieved a knife, and that he "put his hands on the knife and they put the knife to her throat and they cut her throat together." *Id.* at *3. Petitioner stated that after the incident, he drove off in the victim's car, that he threw the knife out of the car on the freeway, and that he parked the car in a nearby alley. *Id.* Officer Fairbanks called dispatch and requested that officers proceed to the victim's apartment in Madison. *Id.*

Officers that responded to the victim's apartment found her body on a blanket in a back bedroom. *Id.* at *4.

> Her wrists were bound behind her back with a riveted black leather belt, her ankles were bound together with another black leather belt, and a black coaxial cable looped between the hand and foot bindings, drawing her limbs together behind her back in a "hog-tie" fashion. A shirt was wrapped around her face, and a cord from a cellular telephone charger protruded from under the shirt.

*Id.* There was blood on the shirt and on the carpet around the victim. *Id.*

Dr. Amy R. McMaster, the medical examiner who performed the autopsy of the victim, testified that the victim had a "pink or peach shirt . . . wrapped around her upper neck and lower mouth" and that "[b]eneath the shirt, a black electrical cord was wrapped around her mouth and neck, securing a white sock which was stuffed in the victim's mouth." *Id.* at *5. The victim had a number of cuts to her neck, though they were not deep enough to damage any of the major blood vessels. *Id.* Dr. McMaster testified that the cause of the victim's death was asphyxiation, or a lack of oxygen. *Id.*

> Dr. McMaster opined that the gag in the victim's mouth made it difficult for her to get air. She explained that the shirt and cable wrapped around her

neck impeded her ability to get oxygen and that the bleeding from the cuts on her neck contributed to the lack of oxygen.

*Id.* Dr. McMaster testified that the manner of death was homicide. *Id.*

Agent Charles Hardy, a forensic scientist with the Tennessee Bureau of Investigation, testified as to the DNA evidence found on the various ligatures and pieces of clothing. Petitioner's DNA was found on the belt around the victim's ankles and on the coaxial cable which connected the victim's wrists and ankles. *Id.* at *6. Petitioner could not be excluded as a minor contributor of the DNA found on the pink shirt. *Id.*

On May 24, 2007, the jury convicted Petitioner of the lesser-included offenses of second degree murder and theft of property valued at more than $1000 but less than $10,000. *Id.* The trial court sentenced Petitioner to a total effective sentence of twenty-five years. *Id.* at *1. This Court affirmed Petitioner's convictions and sentences on appeal, *id.* at *25, and the Tennessee Supreme Court denied permission to appeal.

*Post-Conviction Hearing*

On November 18, 2010, Petitioner timely filed a pro se petition for post-conviction relief, alleging that he received ineffective assistance of counsel. Petitioner asserted that trial counsel (1) did not request jury instructions on the lesser-included offenses of the attempt to commit each level of homicide, aggravated assault, simple assault, or assisted suicide; (2) did not discuss trial strategy with him and did not inform Petitioner that he would be arguing that Petitioner was guilty of reckless homicide; (3) did not request jury instructions on the defenses of necessity, mistake of fact, or assisted suicide; (4) did not object to the medical examiner's testimony that the manner of death was homicide; and (5) did not request that the jury be sequestered.[1] After the appointment of counsel, an amended petition was filed on April 7, 2011. A second amended petition was filed on July 29, 2011.

At the evidentiary hearing on August 31, 2011, Petitioner testified that he told trial counsel that, on the day of the incident, he had been smoking cocaine when he got into an argument with his girlfriend, Ms. Anderson. He told trial counsel that he had tried to stop Ms. Anderson from cutting her throat and that he tied a pink sweater around her neck to stop the bleeding. Petitioner denied that he intended to kill Ms. Anderson. Petitioner

---

[1] On appeal, Defendant raises only the issues of trial counsel failing to discuss trial strategy with him and failing to present assisted suicide as an alternative theory of defense. Therefore, the remaining issues raised in the petition are deemed abandoned. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. 2009), *perm. app. denied* (Tenn. Apr. 16, 2010). We will confine our discussion of the evidence presented at the post-conviction hearing to that related to these issues.

testified that he never discussed trial strategy with trial counsel and that he was surprised when trial counsel told the jury that he was guilty of reckless homicide.

On cross-examination, Petitioner admitted that he was guilty of something, though he believed it was assisted suicide or aggravated assault rather than second degree murder. Petitioner explained that he was willing to plead on the morning of trial to second degree murder in exchange for a sentence of thirty years because he was afraid he could get life if convicted at trial. Petitioner admitted that trial counsel mentioned "saying that [Petitioner] was guilty of something other than first degree murder" but denied that counsel mentioned telling the jury that Petitioner was guilty of reckless homicide. Petitioner wanted trial counsel to present an assisted suicide defense, but trial counsel only briefly mentioned suicide in closing arguments. Petitioner admitted that he met with trial counsel and co-counsel several times and that he told trial counsel that he was responsible for Ms. Anderson's death.

Trial counsel testified that he had worked for the Metropolitan Public Defender's Office for fifteen years and had tried six or seven first degree murder cases. He and co-counsel were appointed to represent Petitioner when retained counsel withdrew after the preliminary hearing. Trial counsel testified that he logged over 160 hours in trial preparation, investigation, meetings, pre-trial motions, and post-trial sentencing preparation. Trial counsel testified that his notes reflected that he met with Petitioner at least twenty-four times.

As far a trial strategy, trial counsel testified that he did not see any evidence supporting assisted suicide as a defense theory. His strategy focused on negating Petitioner's mens rea, specifically arguing that Petitioner was guilty of reckless homicide rather than first degree, premeditated murder. He and co-counsel had numerous meetings with Petitioner where they discussed trial strategy. Petitioner told trial counsel that he had been using drugs and was "sort of vague on what happened." Trial counsel had Petitioner evaluated by a psychiatrist, but the trial court ruled that the psychiatrist could not testify without further substantiating his findings. Such substantiation would have come from Petitioner testifying, and after conducting mock direct examinations, Petitioner chose not to testify. Trial counsel testified that Petitioner was offered a plea deal of thirty years for second degree murder, which Petitioner was willing to accept, but which was no longer "on the table" the morning of trial.

The technical record indicates that there was a second hearing held on January 11, 2012, at the end of which the post-conviction court orally denied the petition with an order to be filed at a later date; however, no transcript of this hearing appears in the record. On February 23, 2012, Petitioner's post-conviction counsel filed a motion to withdraw. No further action was taken on the case until March 10, 2015, when the trial court filed a memorandum opinion denying the petition. Then, on March 30, 2015, the

trial court granted post-conviction counsel's motion to withdraw and appointed appellate counsel. On May 1, 2015, this Court granted Petitioner's motion to waive timely filing of the notice of appeal.

*Analysis*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). A defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting

*United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). This Court will not use hindsight to second-guess a reasonable trial strategy, *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994), even if a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Id.*

Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *Burns*, 6 S.W.3d at 461. This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

Petitioner contends that he received ineffective assistance of counsel because trial counsel failed to discuss trial strategy with him and failed to present assisted suicide to the jury as an alternative theory of defense. The post-conviction court accredited the testimony of trial counsel as to the amount of time spent on trial preparation and the numerous discussions regarding trial strategy. The post-conviction court found that assisted suicide is not a lesser included offense of first degree murder and is not a statutorily recognized defense. Additionally, the post-conviction court found that any such attempted suicide theory was not supported by the evidence, including the fact that the victim was hog-tied. The post-conviction court commented that "[t]he suggestion that [Petitioner's] actions were not intended to cause the death of Ms. Anderson, but were

intended to help Ms. Anderson cause her own death is illogical and would have been an insult to the intelligence of the jury."

This Court has held that assisted suicide is not a lesser included offense of second degree murder, *State v. Wendi Nicole Garrison*, No. E2011-00496-CCA-R3-CD, 2012 WL 3079238, at *8 (Tenn. Crim. App. July 27, 2012) (applying the test laid out in *State v. Burns*, 6 S.W.3d 453, 466-67 (Tenn. 1999)), *perm. app. denied* (Tenn. Jan. 9, 2013),[2] and is not a statutorily listed defense, *id.* (citing T.C.A. § 39-11-201 *et seq.*, -501 *et seq.*, -601 *et seq.*), but may be presented as a theory of defense. However, counsel's decision to present one theory of defense to the exclusion of another is a tactical decision that will not be second-guessed unless it was based upon inadequate preparation, *see Felts v. State*, 354 S.W.3d 266, 281 (Tenn. 2011), even if that "particular strategy or tactical decision failed," *id.* at 277 (citing *Goad*, 938 S.W.2d at 369).

In this case, it cannot be said that trial counsel made the decision to present reckless homicide, rather than assisted suicide, as a theory of defense based on inadequate preparation. Trial counsel spent over 160 hours preparing for trial and met with Petitioner at least twenty-four times. Trial counsel determined that the evidence did not support an assisted suicide defense. Petitioner admitted that he tied up Ms. Anderson and that he was responsible for her death. Trial counsel had Petitioner evaluated by a psychiatrist and unsuccessfully attempted to have his testimony admitted to negate the mens rea for first degree murder. Trial counsel pursued a viable theory of defense which was partially successful in that Petitioner was not convicted of the charged offense of first degree murder. The post-conviction court accredited trial counsel's testimony that he thoroughly discussed trial strategy with Petitioner and that trial counsel "had the full consent of [Petitioner] to pursue the chosen strategy." Petitioner even admitted that trial counsel told him that they would be pursuing a theory that he was "guilty of something other than first degree murder" but denied that he knew that trial counsel would be specifically arguing reckless homicide. Petitioner has not established that trial counsel's performance, either in discussing trial strategy with him or in not presenting an assisted suicide defense to the jury, was deficient. Therefore, we affirm the decision of the post-conviction court to deny the petition.

---

[2] We note that the supreme court is currently reviewing whether part (b) of the *Burns* test has been abrogated by the amendment of Tennessee Code Annotated section 40-18-110. *See State v. Glen Howard*, No. E2014-01510-SC-R11-CD (Tenn. Dec. 11, 2015) (order). However, even if part (b) has been abrogated, the *Wendi Nicole Garrison* court also held that assisted suicide was not a lesser included offense of second degree murder under parts (a) and (c) of *Burns*, *see* 2012 WL 3079238, at *7, which were incorporated into Tennessee Code Annotated section 40-18-110(f). By the same logic, assisted suicide is also not a lesser included offense of first degree murder.

*Conclusion*

Based on the foregoing, we affirm the decision of the post-conviction court.


_____

TIMOTHY L. EASTER, JUDGE